UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MICHAEL R. BERRY, | ) | Case No. C07-1319-TSZ-JPD |
| Plaintiff, | ) | |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) | REPORT AND RECOMMENDATION |
| Defendant. | ) | |

Plaintiff Michael J. Berry appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED and this case be DISMISSED with prejudice.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-eight year old man, with a high school education and post-high school apprenticeship training in pipe fitting and plumbing. Administrative Record ("AR") at 65, 151. His past work experience includes employment as a mechanic, pipe fitter, mail handler and teacher's aid. AR at 91. Plaintiff was last gainfully employed in June 2004. AR

REPORT AND RECOMMENDATION
PAGE – 1

at 91.

On May 21, 2004, plaintiff filed a claim for SSI and DIB, alleging an onset date of November 1, 2000. AR at 23. He subsequently amended his onset date to October 29, 2004. AR at 23. Plaintiff asserts that he is disabled due to pancreatitis and diabetes type II. AR at 25.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 23. Plaintiff requested a hearing which took place on September 7, 2006. AR at 379-95. On November 22, 2006, the ALJ issued a decision finding plaintiff not disabled and denying benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 23-34. Plaintiff submitted additional material to the Appeals Council as part of an administrative appeal of the ALJ's decision. This additional material consisted of a letter from the plaintiff's attorney and a declaration from Shiraz Ahmed, M.D., the plaintiff's treating physician. AR at 9, 369-75. Plaintiff's administrative appeal was denied by the Appeals Council, which adopted the ALJ's ruling. AR at 5-9. Accordingly, these rulings became the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

REPORT AND RECOMMENDATION
PAGE – 2

*Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Berry bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE – 4

other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On November 22, 2006, the ALJ issued a decision finding:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since October 29, 2004, the amended alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: alcoholic pancreatitis and diabetes type II (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, stand and/or walk for six hours in an eight hour day, sit for six hours in an eight hour day, and do unlimited pushing and pulling.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 4, 1959 and was 44 years old on the alleged disability onset date, which is defined as a younger individual age 18-44. He is not 47, which is defined as a younger individual age 45-49 (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled" (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11.   The claimant has not been under a "disability," as defined in the Social Security Act, from October 29, 2004 through the date of this decision (20 CFR 404.1520(g)).

AR at 25-34.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1.   Does the submission of the new evidence to the Appeals Council require remand to the ALJ?

2.   Did the ALJ properly evaluate lab findings regarding the plaintiff's diabetes?

3.   Did the ALJ err in his evaluation of the plaintiff's failure to comply with treatment?

4.   Did the ALJ err in his evaluation of the medical opinion of Dr. Ahmed?

Dkt. No. 12 at 1.

## VII. DISCUSSION

A.   <u>The Submission of the Ahmed Declaration Does Not Require Remand</u>

After the decision by the ALJ, the plaintiff submitted a declaration from Dr. Ahmed to the Appeals Council. AR at 372-75. In this declaration, Dr. Ahmed opined, *inter alia*, that (1) the plaintiff's diabetes is severe and poorly-controlled; (2) the plaintiff has been non-compliant at times, but when he was compliant, this helped; (3) his non-compliance, in the judgment of the doctor, was not intentional, and being fully-compliant is demanding and the plaintiff lacks the physical and mental stamina to do so; (4) even if fully-compliant, plaintiff would suffer from fatigue; and (5) even if fully-compliant, plaintiff would be unable to perform full-time gainful employment. *Id*.

The first issue before the Court is whether the declaration filed after the ALJ's decision should be considered. The Ninth Circuit has long held that after the ALJ has

REPORT AND RECOMMENDATION
PAGE – 6

01 rendered an opinion, treating physician opinions that are solicited by claimant's counsel for

02 litigation purposes may be rejected as less persuasive. *See, e.g.*, *Saelee v. Chater*, 94 F.3d

03 520, 522-23 (9th Cir. 1996); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *cf. Johnson*

04 *v. Callahan*, 975 F. Supp. 1366, 1371 (D. Or. 1997) ("Medical reports issued after the

05 Commissioner's decision . . . are deemed less persuasive than those issued prior to the

06 decision."). The Court recognizes the risk attendant to this situation. Were such evidence

07 sufficient to automatically warrant a reversal, no social security appeal would proceed without

08 claimant's counsel first obtaining it.

09 Based on the argument presented, it appears that plaintiff does not understand that the

10 Appeals Council considered the evidence. Because the Appeals Council reviewed and

11 weighed the evidence, it is part of the record on review to this Court. *See Gomez v. Chater*,

12 74 F.3d 967, 971 (9th Cir. 1996); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

13 The Appeals Council made the declaration part of the record, but concluded:

14 In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals
15 Council. We found that this information does not change the basis for changing the Administrative Law Judge's decision. The decision assigned
16 weight to Dr. Ahmed's opinion consistent with the objective evidence of record. The Administrative Law Judge provided reasons for the conclusions
17 reached. The Administrative Law Judge found diabetes is a severe impairment and to that extent, he reviewed all treating records regarding diabetes and
18 various diabetic residuals, including neuropathy. These were evaluated and considered when formulating your residual functional capacity. The new
19 evidence submitted does not mention a different diagnosis or a treatment that is inconsistent with the evidence discussed by the Administrative Law Judge.
20 In determining the residual functional capacity, the Administrative Law Judge considered these diagnoses in light of the evidence on activities of daily living.
21 The finding is supported by substantial evidence.

22 AR at 5-6.

23 Plaintiff argues that the submission of Dr. Ahmed's declaration and its consideration

24 by the Appeals Council requires that this matter be remanded to the ALJ for further

25 consideration. However, as indicated above, the Appeals Council specifically considered the

26 declaration and adopted the decision of the ALJ. Indeed, the plaintiff does not even address

REPORT AND RECOMMENDATION
PAGE – 7

01 the Appeals Council's analysis of the declaration.  To argue a remand is necessary simply

02 because counsel was able to obtain an after-the-fact declaration from a doctor has the

03 possibility of turning a disability hearing into a never-ending-process.  Instead, the inquiry

04 must be on the issue addressed by the Appeals Council, namely, does the newly submitted

05 information undermine the basis of the ALJ's decision?

06       B.      The ALJ Properly Evaluated the Lab Evidence

07 Plaintiff next claims that the ALJ failed to evaluate the lab evidence properly.  In his

08 opinion, the ALJ gave great weight to some lab tests that indicated the plaintiff had normal

09 renal and liver functioning, as well as normal cholesterol levels.  AR at 30.  The plaintiff then

10 cites additional lab evidence that showed that the plaintiff suffered serious and uncontrolled

11 diabetes.  Dkt. No. 12 at 7.  From there, the plaintiff extrapolates that the ALJ's medical

12 evaluation is not supported by the record.

13 However, the ALJ never disagreed that the plaintiff suffered from uncontrolled

14 diabetes or, as noted above, that the diabetes was a severe impairment.  In its opposition, the

15 Commissioner also argues that the tests showing normal liver function, renal functioning, and

16 cholesterol testing were ordered by plaintiff's treating physician, and that Dr. Ahmed found

17 that these tests were, in fact, an important indicator of plaintiff's overall health.  Dkt. No. 13 at

18 5 (citing AR at 27).

19 The ALJ did not err in his use or assessment of the lab results.  Plaintiff's argument is,

20 in actuality, one directed to the fourth assignment of error, the issue of whether the ALJ

21 properly evaluated the medical opinions of Dr. Ahmed.

22       C.      The ALJ Did Not Err by Using Plaintiff's Non-Compliance as Part of an Adverse Credibility Assessment

23

24 Credibility determinations are particularly within the province of the ALJ.  *Andrews*,

25 53 F.3d at 1043.  Nevertheless, when an ALJ discredits a claimant's subjective symptom

26 testimony, he must articulate specific and adequate reasons for doing so.  *Greger v. Barnhart*,

REPORT AND RECOMMENDATION
PAGE – 8

464 F.3d 968, 972 (9th Cir. 2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *2-3. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p, 1996 WL 374186, *2-3. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). When evaluating a claimant's credibility, however, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." *Greger*, 464 F.3d at 972 (internal quotation omitted). General findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between his testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284.

Here, there are no allegations that plaintiff was malingering, therefore the ALJ was required to provide clear and convincing reasons for discounting his testimony. *Reddick*, 157 F.3d at 722. The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms he alleged, but concluded that

REPORT AND RECOMMENDATION
PAGE – 9

plaintiff's "statements concerning the intensity, persistence and limiting effects of all [the] symptoms alleged are not credible." AR at 26. In making this determination, the ALJ considered all symptoms alleged by plaintiff that could "reasonably be accepted" as consistent with the objective medical evidence and other evidence presented in the record, based on the requirements of 20 C.F.R. § 404.1529 and Social Security Rulings ("SSRs") 96-4p and 96-7p.[2] AR at 26.

The ALJ found that the plaintiff's claims of his limitations were not credible,

> due to his lack of compliance with medical advice, his repeated reports on no mood problems and cessation of depression medication. . . , his report that he ceased his airplane cleaning job due to lack of work, not due to his medical condition, and was laid off at Boeing and Todd shipyard . . . his allegation that he spent his time with his feet elevated almost all day is either gross exaggeration or a matter not attributable to his medical condition, and he managed to travel in August 2004

AR at 32 (citations omitted).

Here, the plaintiff does not assign error to an adverse credibility determination by itself, but asserts that the ALJ failed to assess properly the plaintiff's lack of compliance. A claimant's lack of motivation and follow-through with recommended treatment are proper subjects of inquiry when considering the credibility of symptom testimony. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). The record is replete with references to the failure of the plaintiff to comply with suggested treatment that could assist the plaintiff in dealing with his diabetes. Many of these references came directly from his latest treating physician, Dr. Ahmed. *See, e.g.*, AR at 27-31. Evidence of the failure to comply was also provided by his earlier treating physician, Mark Ensminger, M.D. AR at 27.

Plaintiff argues that the ALJ used evidence of non-compliance incorrectly, suggesting

---

[2] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION
PAGE – 10

there are two ways to treat the non-compliance issue. Dkt. No. 12 at 10-12. The first is consider non-compliance in connection with an assessment of the plaintiff's credibility of his stated limitations; the second is to consider non-compliance in connection with whether the limitations should be ignored due to the lack of non-compliance. *Id.* The plaintiff asserts that the ALJ should not have used the evidence of non-compliance to find him not credible because the plaintiff, according to Dr. Ahmed, was "significantly ignorant" of the proper diet, because it strains credulity to find that he did not suffer the limitations claimed, and because according to the post-hearing declaration filed by Dr. Ahmed, the plaintiff's non-compliance was not unusual for patients with diabetes. Dkt. No. 12 at 12.

The plaintiff's arguments miss the mark for several reasons. First, the ALJ's credibility determination was not based solely on the overwhelming evidence in the record of the plaintiff's failure to comply with suggested treatment, but also on the other issues set forth above. These issues are not challenged by plaintiff.

Second, failure to comply, as discussed above, is a legitimate basis upon which to base an adverse credibility determination. To suggest that it be ignored because the plaintiff was "significantly ignorant" of the proper diet overlooks the fact that the plaintiff was found to have no cognitive or intellectual deficiency that would affect his mental abilities to comply with treatment. AR at 25, 152.

Third, as to whether it strains credulity to find that plaintiff did not suffer the limitations claimed, analysis of these issues is particularly directed to the ALJ. *Andrews*, 53 F.3d at 1043. The ALJ noted that the plaintiff was able to perform multiple activities of daily living regardless of his asserted functional limitations. For example, the plaintiff was active with "different jobs, kids' sports programs," he traveled, performed household chores, did grocery shopping, assisted in the care of his children, attended church and volunteered as a youth pastor. AR at 27. An ALJ is authorized to consider a claimant's daily activities when making an assessment of the claimant's credibility. *Reddick*, 157 F.3d at 772. These activities

REPORT AND RECOMMENDATION
PAGE – 11

01 are inconsistent with the plaintiff's claims that he spent most of the day sitting with his feet
02 elevated. The ALJ did not err in this regard.

03 Fourth, the fact that many persons, according to Dr. Ahmed's declaration, find it
04 difficult to follow instructions does not impact the credibility assessment. Indeed, if this were
05 to be the case, an ALJ would be unable to make a credibility assessment in any case involving
06 diabetes. Instead, the ALJ meticulously reviewed the history of non-compliance, as well as the
07 excuses offered by the plaintiff in this regard. The plaintiff offered many different reasons for
08 his failure to comply. For example, after discussing the impact of non-compliance with the
09 plaintiff, Dr. Ensminger noted that the plaintiff attributed his non-compliance to different jobs,
10 kids' sports programs, and "lots of excuses which he knows are really no excuse for him not
11 taking care of himself." AR at 183. Between 2002 and 2004, plaintiff had no follow-up,
12 explaining he had been busy with his "personal life and other issues and hence ha[d] not been
13 able to make an appointment." AR at 178. Later, Dr. Ahmed noted that the plaintiff
14 continued to be noncompliant because "he has had family issues, including traveling." AR at
15 167.

16 The ALJ is charged with making credibility assessments. Here, the adverse credibility
17 assessment is fully supported by the record. The ALJ did not err by considering the plaintiff's
18 non-compliance as a factor in that adverse credibility determination.

19 D.     The ALJ Did Not Err in His Evaluation of Dr. Ahmed's Opinions

20 In his final assignment of error, the plaintiff claims the ALJ did not properly evaluate
21 the medical opinions of Dr. Ahmed. Dkt. No. 12 at 13. Dr. Ahmed was the treating physician
22 for the plaintiff.

23 As a matter of law, more weight is given to a treating physician's opinion than to that
24 of a nontreating physician because a treating physician "is employed to cure and has a greater
25 opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751;
26 *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "Likewise, greater weight is

REPORT AND RECOMMENDATION
PAGE – 12

accorded to the opinion of an examining physician than a non-examining physician." *Andrews*, 53 F.3d at 1041; *see also* 20 C.F.R. § 416.927(d)(1).

A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

In October 2004, Dr. Ahmed wrote that the plaintiff had very poorly controlled diabetes mellitus type 2, severe neuropathy with neuropathic pains in his lower extremities, depression and chronic abdominal pain secondary to pancreatitis. He asked that the plaintiff be given permission to be on short-term disability until more optimum control could be achieved. AR at 159. The ALJ gave this report little weight, finding that the report did not have any analysis of specific limitations, that plaintiff was non-compliant, that the disability was short-term in nature until the plaintiff could get his diabetes under control, and that he had been released to perform work release. AR at 29-31.

The ALJ determined that the plaintiff had a residual functional capacity of doing light work. AR at 34. He based this in part on the report of reviewing state agency physician, Alnoor Virji, M.D. AR at 28, 210-15. The ALJ also noted that the plaintiff encountered some unrelated legal difficulties in September 2005. He was given a sentence of work release.

Plaintiff sought, and obtained, a delay of his work release obligations until he recovered from an automobile accident, but in October 2005, Dr. Ahmed released the plaintiff to complete these requirements. AR at 266. The ALJ cited this as evidence that Dr. Ahmed did not believe that the plaintiff was unable to do work-related activity. AR at 31. This was not error on the part of the ALJ.

In addition, the ALJ cited the fact that in October 2004, Dr. Ahmed recommended that plaintiff receive "short-term disability" until he was able to gain control over his diabetic condition, which he had been ignoring previously. AR at 29. The notion of need for short-term disability does not meet the durational test for disability for purposes of Social Security, which requires that both the impairment and the inability to work last at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 217 (2002).

Finally, the ALJ discounted Dr. Ahmed's October 2004 opinion, because it contained no analysis of plaintiff's impairment-related functional limitations. AR at 29-30. An ALJ "may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson*, 359 F.3d at 1195.

It is possible to construe the medical evidence as urged by the plaintiff. However, it cannot be said that the evidence is susceptible of only the interpretation urged by the plaintiff. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954.

This conclusion is not altered by the subsequent declaration of Dr. Ahmed, filed after the ALJ decision. As discussed above, in § VII. A., post-hearing submissions are less persuasive. Moreover, the declaration in question was specifically considered by the Appeals Council, which discussed the basis for why the so-called new evidence would not change its conclusions. The plaintiff has not assigned error to the Appeals Council analysis or consideration of this evidence.

## VIII.  CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED and this matter DISMISSED with prejudice.   A proposed order accompanies this Report and Recommendation.

DATED this 13th day of March, 2008.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE – 15